# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID YOUNG, CHRISTOPHER HARRIS, MICHAEL TAYLOR, and AMERICAN INTERNATIONAL SECURITY CORPORATION,<br><br>Defendants. | **RULING & ORDER GRANTING LEAVE TO FILE BUT DENYING MOTION FOR BILL OF PARTICULARS**<br><br>Case No.  2:12 CR 502<br><br>District Judge Tena Campbell<br><br>Magistrate Judge Dustin Pead |

This matter was referred to Magistrate Judge Dustin Pead by District Judge Tena Campbell pursuant to 28 U.S.C. § 636(b)(1)(A).  (Docket No. 111, 139.)  Before the Court is Michael Taylor and American International Security Corporation's ("AISC") (collectively "Defendants") "Motion for Leave and for Bill of Particulars."  (Docket No. 139.)  No oral argument has been requested and the Court elects to determine the motion on the basis of the written memoranda.  *See* DUCrimR 12-1(b)(3).

## BACKGROUND

The charges against Defendants in this case center on the allegedly improper award of a 2007 U.S. Army contract for military support and training of Afghan forces.  (Docket No. 11.)  In August 2012, a grand jury returned an indictment naming, among others, Mr. Taylor and AISC as defendants.  (*Id*. at 1.)  In relevant part, the Indictment alleges that David Young, an official

with the U.S. Army at the time in question, "possessed bid, proposal, and source selection information about a pilot contract related to logistics and weapons maintenance support for Afghan commando units."[1]  (*Id*. at 2.)  As set forth in the Indictment, co-defendant Young was barred "from personally benefitting from the Contract" and he unlawfully disclosed "Protected Contract Information" to Defendants and Christopher Harris prior to the award of the Contract. (*Id*. at 2–3.)  This included "bid, proposal, and source selection information" about the Contract.[2] (*Id.* at 3.)  The Indictment alleges that after receiving such information, "AISC submitted a bid to the U.S. Army for the Contract and won the award of the Contract."  (*Id*.)

At its core, the Indictment alleges Defendants Taylor, Young, and Harris agreed to use the "Protected Contract Information to obtain an unfair competitive advantage over other bidders in order to obtain the Contract" for AISC.  (*Id*. at 6.)  And, in exchange for co-defendant "Young using his official position to influence the solicitation and award of the Contract," he would be given money from AISC through a variety of means.  (*Id*.)  According to the Indictment, the bid submitted by AISC "very closely matched the U.S. Army's price estimate for the Contract, which [co-defendant] Young assisted in establishing."  (*Id*. at 7.)  Thereafter, co-defendants Young, Taylor, and Harris financially benefitted, as well as AISC which was awarded the Contract.  (*Id*. at 8.)

---

[1] The Indictment identifies the "Contract" as "the procurement and execution of [the] pilot contract, including modifications, together with four ensuing follow-on contracts."  (Docket No. 11, at 2.)

[2] This also appears to include "the government's price estimate," as well as "competing bid information, and other confidential procurement information."  (*Id*. at 6.)

"Overt Acts" relating to Count 1 Conspiracy under 18 U.S.C. § 371 are also alleged. Generally, they describe, among other things: (1) efforts by co-defendant Young to persuade other co-defendants to submit a bid (*id*. at 9, ¶ 41(B)-(C)); (2) co-defendant Young's submission to the U.S. Army of AISC as one of the limited companies that should be permitted to bid on the contract (*id*., ¶ 41(D)); (3) the sending of an email by co-defendant Young to co-defendant Harris "containing Protected Contract Information, including source selection information" (*id*. at 9-10, ¶ 41(G)); (4) written communications between various co-defendants regarding how they would be enriched in the event of a successful bid (*id*. at 10, ¶ 41(H)-(J)); (5) an email sent from co-defendant Taylor to other co-defendants "discussing a revision of AISC's bid for the Contract and the price of a competing Contract bid" with a request "for advice on AISC's proposal price" (*id*., ¶ 41(K)); and (6) various payments to co-defendants as a result of AISC being awarded the Contract (*id*. at 11, ¶ 41(Q)-(T)).

The Indictment specifically charges Defendants Taylor and AISC with: (1) one count of Conspiracy in violation of 18 U.S.C. § 371 (Count 1, describing the object[3] and manner and means of the conspiracy as well as alleged overt acts); (2) one count of "Government Procurement Fraud" in violation of 41 U.S.C. § 2102(b) (Count 3); (3) thirteen counts of Bribery of a Public Official in violation of 18 U.S.C. § 201(b)(1)(B) (Counts 4-16); (4) sixteen counts of Wire Fraud in violation of 18 U.S.C. § 1343 (Counts 30-45); (5) one count of Conspiracy to

---

[3]"The object of the conspiracy was for the individual defendants to obtain the Contract for AISC through bribery and by fraudulent disclosure of Protected Contract Information before the award of the Contract and in order to unlawfully enrich the defendants[.]"  (*Id*.)

Commit Money Laundering in violation of 18 U.S.C. § 1956(h) (Count 46, also describing the object and manner and means of the conspiracy); (6) twelve counts of Money Laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Counts 47-58); and (7) seven counts of Money Laundering in violation of 18 U.S.C. § 1957 (Counts 59-65). (Docket No. 11.)

On February 22, 2013, Defendants filed a "Motion for Leave and for Bill of Particulars" requesting an order directing the United States to provide additional information with respect to Counts 1, 3, 4–16, and 30–45 of the Indictment. (Docket No.139, at 1–3.) Defendants assert that "certain omissions and ambiguities remain" with respect to the charges listed above despite the United States' facilitation of extensive discovery. (*Id*. at 4.) Defendants argue that these omissions and ambiguities provide good reason to grant a bill of particulars in this case. (Docket No. 139 at 4.) In response, the United States argues that a bill of particulars is not necessary because the Indictment sets forth the elements of the charged offenses and "sufficiently apprises the defendant[s] of the charges to enable [them] to prepare for trial." (Docket No. 141 at 5.) For the reasons described below, the Court denies Defendants' motion.

## STANDARD OF REVIEW

The Federal Rules of Criminal Procedure allow a defendant to "move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits." Fed. R. Crim. P. 7(f). A district court has "broad discretion" in deciding a motion for a bill of particulars. *United States v. Dunn*, 841 F.3d 1026, 1029 (10th Cir. 1988).

The purpose of a bill of particulars is "to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to

enable him to plead double jeopardy in the event of a later prosecution for the same offense." *Id.* (quoting *United States v. Cole*, 755 F.2d 748, 760 (11th Cir. 1985)). However, a bill of particulars is not a discovery device, and is meant only to "amplify the indictment." *Id.* (quoting *United States v. Johnson*, 575 F.2d 1347, 1356 (5th Cir. 1978)). Therefore, a "defendant is not entitled to notice of all of the *evidence* the government intends to produce, but only the *theory* of the government's case." *United States v. Ivy*, 83 F.3d 1266, 1281 (10th Cir. 1996) (citation and internal quotation marks omitted) (emphasis in original). In sum, "[a] bill of particulars is not necessary if the indictment sets forth the elements of the offense charged and sufficiently apprise[s] the defendant of the charges to enable him to prepare for trial." *Id.* (citation and internal quotation marks omitted).

## DISCUSSION

The Court first turns to, and grants, Defendants' motion for leave to file an untimely motion for bill of particulars. As Defendants correctly note, Fed. R. Crim. P. 7(f) contemplates a filing window of 14 days "after arraignment" which, of course, did not happen in this case. That said, the rule also contemplates a later filing "if the court permits." *Id.* In their motion, Defendants argue a basis for the untimely submission which the government does not meaningfully address or otherwise contest. The Court is also independently persuaded that permission to file should be granted for the reasons asserted by Defendants. Therefore, the Court grants leave to file, and hereby considers, the Motion for Bill of Particulars.

The Court concludes that the Indictment reasonably apprises Defendants of the criminal charges brought against them and of the theory of the United States' case. In addition, an

immense amount of discovery has been provided.  Therefore, Defendants' Motion for Bill of Particulars is denied.

Before addressing Defendants' specific claims, the Court addresses the procedural posture of this case and context as it relates to discovery.  The Indictment in this case was returned by grand jury in August 2012.  (Docket No. 11.)  Since that time, various issues have been addressed relating to, among other things, venue (Docket No. 22, 36, 39, 41, 58, 59, 62, 65-66, 69, 72-73, 87), recusal (Docket No. 23, 29, 121, 124), detention (Docket No. 42, 53, 86 ), and matters relating to forfeiture (Docket No. 138, 140, 143, 148).  In addition, the government has provided a large amount of discovery.  (Docket No. 48, 51, 63, 107-108, 112 ("discovery is ongoing and [] it is voluminous" ), 115, 125, 130 (entry dated February 1, 2013, detailing "any remaining discovery will be provided within two weeks" and excluding time from speedy trial calculation because of, among other things, "the volume of discovery in this case"), 147, 170).[4]

Defendants Taylor and AISC have filed, and been denied, an "Emergency Motion for Stay of Proceedings."  (Docket No. 126, 129.)  Defendants have also filed a Motion to Dismiss (Docket No. 149, 161 (government opposition)), for which a hearing has been set (Docket No. 163).  Further, on May 1, 2013, the government filed a notice of intent to use Rule 404(b) evidence from a related case which involves a large amount of discovery in its own right.

---

[4]In its opposition to Defendants' motion filed on March 11, 2013, the government indicated that it had produced "approximately 102,000 pages" comprising "more than 32 gigabytes of material."  (Docket No. 141, at 6.)  Based on its most recent "Certificate of Compliance" it appears the amount of discovery is near 115,000 pages.  (Docket No. 170.)

(Docket No 165, referencing 2:12 CR 645.)[5]

To be sure, this recitation describes a diverse set of issues relating to this case. But as it relates to the instant motion, it underscores that Defendants have been provided a large amount of discovery, multiple hearings have been held, and the process is ongoing. The Court agrees with the government that this type of activity, particularly the massive discovery already provided, places Defendants in a position to meaningfully examine and review the claims set forth in the Indictment in detail.

In this regard, the government cites, and the Court agrees, that *United States v. Kunzman*, 54 F.3d 1522 (10th Cir. 1995) undermines the instant motion. In that case, a co-defendant alleged that a superseding indictment "did not specify sufficiently the acts allegedly performed by him" which "hindered his ability to prepare his defense as well as his ability to limit the evidence admitted at trial." *Id.* at 1526. Noting that "actual surprise" is required to show prejudice, the Tenth Circuit disagreed. *Id.* Among other things, the Tenth Circuit noted the co-defendant was provided with "full discovery of the government's materials prior to trial" and, coupled with descriptions in the indictment, the denial of the motion for a bill of particulars was not an abuse of discretion. *Id.* The same principle, the Court concludes, holds true here. *See also United*

---

[5]In its Sixth Certificate of Compliance filed in that case, the government indicates that it has produced "a total of 1,070,037 pages of material" including nearly 900,000 pages of material obtained from hard drives belonging to some of the defendants in that case. (*See* 2:12 CR 645, Docket No. 253.) With respect to proposed Rule 404(b) evidence, in the scheduling order issued on May 6, 2013, Judge Campbell orders the United States to "list specific documents (with identifying numbers) [it intends to use], as well as provide a list of witnesses with a brief synopsis of what the witnesses will say" by May 24, 2013, with objections from Defendants due June 6, 2013. (Docket No. 169.)

*States v. Geise*, 597 F.2d 1170 (9th Cir. 1979) (holding "full discovery obviates the need for a bill of particulars"). The grand jury has returned a "speaking" Indictment with both background and specifics and, together with the immense discovery provided, places Defendants on adequate notice of the charges against them and enables them to prepare their defense.

### A. Defendants' Requests for Particulars with Respect to Count 1

With respect to Count 1 of the Indictment, Defendants make five specific requests for particulars. (Proposed Order "P.O." (Docket No. 139-1) at 1–3.) Request 1 asks for "specific 'information about the government's price estimate' which the government claims Defendant Young disclosed . . . as well as precisely when and how the government claims Defendant Young did so." (P.O. at 1.) Request 2 asks for "specific 'source selection criteria' which the government claims Defendant Young disclosed . . . as well as precisely when and how the government claims Defendant Young did so." (P.O. at 2.) Request 3 asks for "specific 'competing bid information' which the government claims Defendant Young disclosed . . . as well as precisely when and how the government claims Defendant Young did so." (P.O. at 2.) Request 4 asks for "specific 'other confidential procurement information' which the government claims Defendant Young disclosed. . . as well as precisely when and how the government claims Defendant Young did so." (P.O. at 2.) And Request 9 asks for "any information which the government claims [Defendants] obtained . . . [and] how such information gave AISC a 'competitive advantage in the award of a Federal agency procurement contract.' " (P.O. at 3.)

Defendants' arguments with respect to Count 1 hinge upon a lack of "detail" or "essential facts." (Docket No. 144 at 4.) Defendants assert that if the United States has confidence in its

case it should "show its cards, rather than wait and see if a case develops." (*Id.*) Defendants also repeatedly argue that if the United States has any specific evidence relating to the wrongful acts charged in Count 1, it "should not object to saying as much in a bill of particulars." (*Id.*)

The Court concludes that Defendants arguments go to a request for information that is beyond the theory of the government's case. As stated above, a "defendant is not entitled to notice of all of the *evidence* the government intends to produce, but only the *theory* of the government's case." *Ivy*, 83 F.3d at 1281 (citation and internal quotation marks omitted). An indictment is generally considered to be sufficient "if it sets forth the offense in the words of the statute so long as the statute adequately states the elements of the offense." *United States v. Salazar*, 720 F.2d 1482, 1486 (10th Cir. 1983).

In this case, the Indictment adequately tracks the language of the statute and provides sufficient detail with respect to Count 1 to allow Defendants to prepare their defense for trial. The Indictment identifies the conspirators, the specific crimes the conspirators agreed to commit, and the time frame and locations of the conspiracy. The Indictment also cites the object of the conspiracy, describes the manner and means of the conspiracy, and lists 19 overt acts that effected the object of the conspiracy.

It is true, as Defendants argue, that the Indictment does not provide specific information regarding the government's price estimate, source selection criteria, competing bid information, or confidential procurement information, and it can be fairly said that requiring the United States to supply this factual information would assist Defendants in preparing their case. But an indictment does not need to allege "in detail the factual proof that will be relied upon to support

the charges." *Dunn*, 841 F.2d at 1029. In this case, with respect to Count 1, the Indictment has clearly set forth the alleged offense and the United States' theory of how and why this offense was committed. This includes various overt act allegations referenced by the government in its response to the motion. (Docket No. 11, ¶¶ 41(C), (G)-(N), (U).)

In addition, recognizing that the production of discovery is ongoing, there has been no claim from Defendants that they have not been provided with evidence relating to this charge that will, the Court assumes, shed further light on the specifics they request. Among other things, the Court notes the allegations that (1) co-defendant Young disclosed "the government's price estimate" in conjunction with the "source selection criteria" which is more specifically detailed in the Indictment and such information was specifically forwarded from co-defendant Young to co-defendant Harris as an "overt act" for which the Court assumes discovery has been provided (Docket 11, at 7, 9-10 ¶ 41(G)), and (2) co-defendant Taylor sent an email to other co-defendants specifically providing "the price of a competing Contract bid" (*id*., at 10 ¶ 41(K)) which email the Court also assumes has also been provided in discovery. The Court recognizes that the "other confidential procurement information" referenced in the Indictment is not specifically detailed. (*Id*. at 6.) However, the Court assumes that full discovery has been or will be provided concerning the entire scope of the information co-defendant Young alleged disclosed and, at this point, concludes that further specificity is not required.

Finally, the Court rejects Defendants' request for specific information regarding the alleged "competitive advantage" described in the Indictment. The Court concludes that the theory of the government's case - that the disclosure of the "Protected Contract Information"

facilitated the unlawful awarding of the Contract to AISC - speaks for itself. This is also apparent from the alleged overt act of co-defendant Taylor himself discussing how to frame AISC's proposal to meet bid criteria and win the award of the Contract. (*Id.* at 10, ¶ (K).) Therefore, the Court finds the Indictment to be sufficient and denies Defendants' requests with respect to Count 1 of the Indictment.

### B. Defendants' Requests for Particulars with Respect to Count 3

With respect to Count 3 of the Indictment, Defendants also make five specific requests for particulars. (P.O. at 2–3.) Request 5 and 6 ask for "specific 'contractor bid proposal information' which the government claims [Defendants] 'obtained' prior to award, as well as precisely when and how the government claims he obtained it." (P.O. at 2.) Requests 7 and 8 ask for "specific 'source selection information' which the government claims [Defendants] 'obtained' prior to award, as well as precisely when and how the government claims he obtained it." (P.O. at 2.) And Request 9 asks for "any information which the government claims [Defendants obtained] . . . [and] how such information gave AISC a competitive advantage in the award of a Federal agency procurement contract." (P.O. at 3.)

Defendants argue the "Government Must Identify the Theory of Its Case." (Docket No. 139 at 4.) More specifically, Defendants assert that in order to prepare a defense, minimize surprise at trial, and protect against double jeopardy, they must have the specific information requested above. In addition, Defendants request information regarding how and through whom this information was obtained, as well as the competitive advantage gained as a result of the information.

To support these requests, Defendants detail the "imprecision and ambiguity latent in the Indictment" in respect to Count 3. (Docket No. 139 at 5–9.) Defendants argue that these ambiguities include charging Defendants with a violation of the wrong section of the United States Code under the *Ex Post Facto* Clause[6] and failure to allege essential elements of the criminal offense charged.[7] Defendants assert that they must know what sub-provision of the statute the United States intends to proceed under in order to prepare a defense.

To the extent Defendants allege an infirmity apart from the need for specifics, this Court notes that Judge Campbell has scheduled a hearing on that matter for later this month. (Docket No. 163.) Therefore, the merits of that claim will not be considered in this order.

For essentially the same reasons described above relating to Count 1, the Court similarly denies Defendants' request relating to Count 3. The sufficiency of an indictment "is determined by practical rather than technical considerations." *Dunn* 841 F.2d at 1029 (citation and internal quotation marks omitted). It may be fairly said that this count of the Indictment could more specifically identify the "contractor bid proposal information" and "source information." However, the count "incorporates by reference" earlier paragraphs relating to the conspiracy

---

[6]Defendants specifically argue that the *Ex Post Facto* Clause of the U.S. Constitution requires that the federal statute in effect at the time of the alleged criminal conduct controls. *See* U.S. Const. art. I, § 10. In this case, Defendants argue that 41 U.S.C. § 423, which was in effect in 2007 would control.

[7]Defendants assert that the Indictment fails to cite the specific provision that make it a crime to violate 41 U.S.C. § 423 or 41 U.S.C. § 2102. Defendants argue that the neglected operative criminal provision in each case is 41 U.S.C. § 423(e)(1) for 2007, and 41 U.S.C. § 2105(a) under the current statute. Defendants claim that either provision is an essential element of the criminal offense charged.

under 18 U.S.C. § 371 and Count 2's reference to "the Contract" allegedly disclosed by co-defendant Young. And, as noted above, the overt acts fairly reference specific conduct alleged in support of this count. Finally, the Court assumes that discovery provided will shed additional light.

Considered as a whole, the Indictment practically informs Defendants of the elements of the crime alleged in Count 3, as well as the United States' theory of how and when the crime was committed. The Indictment claims that Defendants knowingly obtained confidential contract information before the award of the Contract. (Docket 11, at 12-13.) The Indictment also claims that this confidential information was used to "obtain an unfair competitive advantage over the other bidders in order to obtain the Contract." (*Id*. at ¶ 22.) In conjunction, these two claims allege the essential elements of the criminal offense charged in Count 3. In addition, the Conspiracy section of the Indictment adequately presents the United States' theory of how, when, and why the crime charged in Count 3 was committed. (*Id*. at ¶¶ 20–41.) Therefore, the Court finds the Indictment to be sufficient and denies Defendants' requests with respect to Count 3.

### C. Defendants' Requests for Particulars with Respect to Counts 4-16

With respect to Counts 4–16 in the Indictment, Defendants make two specific requests. (P.O. at 3.) Requests 10 and 11 ask for the identification of the "specific 'fraud . . . on the United States' which the government claims [Defendants] gave, offered and promised a thing of value to Defendant Young to commit and aid in committing, to collude in and allow, and to make an opportunity for the commission of." (*Id*.)

Defendants argue that the Indictment fails to identify the fraud which Defendants

allegedly bribed Young to commit. (Docket No. 139 at 10.) Defendants also argue that the Indictment fails to identify the scheme or artifice to defraud the United States or any fraudulent pretenses or representations made with respect to Counts 4-16. (*Id*.)

In this case, information regarding the scheme or artifice to defraud the United States, as well as identification of the specific fraud are included in the Indictment. The "Object of the Conspiracy" and the "Manner and Means of the Conspiracy" sections of the Indictment explain the allegation that Defendants bribed Mr. Young to fraudulently disclose confidential contract information, then used this information to manipulate Defendants' contract bid and the award process in order to win the Contract. (*See* Docket 11, at 21-40.) All of this allegedly happened without the United States knowledge or consent.

While this count of the Indictment does not state the "specific fraud" in the technical language or order preferred by Defendants, it does, by reference, practically apprise Defendants of the fraud involving the wrongful disclosure of confidential contract information, and the scheme and overt actions that Young, Harris, and Defendants allegedly took to obtain the Contract. The Court is satisfied that the information in the Indictment adequately informs Defendants of the alleged violations of law charged in Counts 4-16. Therefore, the Court finds the Indictment to be sufficient and denies Defendants' requests with respect to Count 4–16.

### D. Defendants' Requests for Particulars with Respect to Counts 30-45[8]

With respect to Counts 30-45 in the Indictment, Defendants make four specific requests.

---

[8]The Court notes that in its opposition to the Motion to Dismiss (Docket No. 161, at 23), the government seeks leave of the district court to dismiss Counts 31-33 for lack of venue.

(P.O. at 3-4.)  Requests 12 and 13 ask the United States to identify the "specific scheme and artifice to defraud the United States which the government claims [Defendants] devised and intended to devise."  (P.O. at 3.)  And Requests 14 and 15 ask for the "specific materially false and fraudulent pretenses, representations, and promises which the government claims [Defendants] used or employed in connection with any identified 'scheme and artifice to defraud.' "  (P.O. at 3-4.)

Defendants argue that a defendant charged with wire fraud is entitled to know "certain basic matters" prior to trial.  (Docket No. 139, at 10.)  This includes the identity of the victim, the particular false pretenses, representations, or promises made, and the documents containing the false information.  (*Id*.)  Defendants argue further that the Indictment is entirely devoid of any information regarding false pretenses, representations, or promises made, and that the Indictment fails to provide any detail about the alleged "scheme or artifice to defraud."  (*Id*. at 11.)  The Court disagrees.

The Indictment identifies the United States as the victim of the wire fraud.  (Docket No. 11 at 15.)  Further, the "Manner and Means of the Conspiracy" section incorporated by reference alleges Young fraudulently disclosed confidential contract information and Defendants used this information to manipulate the bidding process.  (*Id*. at 6-8.)  This information adequately identifies the allegedly "false and fraudulent pretenses" Defendants undertook to obtain the Contract.  While the Indictment does not include the specific evidence or detail desired by Defendants in respect to Counts 30-45, it does state the essential elements of wire fraud and adequately explains the United States' theory of how Defendants' behavior violated the wire

fraud statute. Therefore, the Court finds the Indictment to be sufficient and denies Defendants'

requests with respect to Count 30–45.

## CONCLUSION

In sum, the Court finds that the speaking Indictment, and the open and complete

discovery provided by the United States, furnishes Defendants with the adequate notice and

detail necessary to prepare their defense for trial. The Court is sympathetic to the difficult task of

preparing a defense to the charges in this case. The alleged crimes and the factual context are

complex and have led to a discovery production of approximately 115,000 pages. Defendants'

preparation of their defense has certainly been and will continue to be difficult. However, it is

Defendants' responsibility to prepare their defense "regardless of whether the discovery [is]

copious and the preparation . . . [is] difficult." *Ivy*, 83 F.3d at 1282. In short, the requests posited

by Defendants are more akin to a request for evidence as compared to theory.

## ORDER

Defendants' Motion for Leave to File a Motion for a Bill of Particulars is GRANTED.

Defendants' Motion for Bill of Particulars is DENIED.

DATED this 7th day of May, 2013.

BY THE COURT:

_____
DUSTIN PEAD
United States Magistrate Judge